## THE GALVESTON WHARF CO. v. THE CITY OF GALVESTON.

### (Case No. 1600.)

1. GALVESTON WHARF COMPANY — DECREE. — The decree of the district court of Brazoria county, rendered April 1, 1869, in the case of The City of Galveston v. The Galveston Wharf Company, consolidating the interests of the respective parties thereto, vested the undivided one-third of the property of the consolidated wharf company in the city of Galveston, with the exception of certain property specified in the decree. Said one-third interest was represented by one-third of the stock of the consolidated company.

2. SAME. — The effect of said decree was to vest in the city of Galveston, not only the right to receive one-third of the dividends accruing to the wharf company, but the further right to one-third of the entire property of the company as consolidated; it being, however, subject to the control of the Galveston Wharf Company for the uses and purposes for which the consolidation was made.

3. SAME. — The power to alienate one-third of the wharf company property, which was reserved to the city in said decree, is inconsistent with any other relation to the one-third interest than that of ownership by the city.

4. SAME. — Said decree clothes the wharf company with a power to be exercised in the management of said one-third interest, through a directory to be selected, in which the city of Galveston is to be represented as provided by said decree.

5. WHARVES. — The fact that compensation is received for the use of a wharf across which the commerce of a country passes does not divest it of its public character.

6. TAXATION. — CONSTITUTIONAL LAW. — Sec. 1, art. 8, of the state constitution, which enumerates certain property which is exempt from taxation, cannot be construed to subject all property not specified to taxation; that section simply indicates the character of things and the uses to which they must be appropriated in order to entitle them to the exemption.

7. TAXATION OF MUNICIPAL PROPERTY. — In the absence of any statute controlling the subject, such property as a municipal corporation owns and uses for a public purpose is not affected by general laws regulating taxation. (Citing many cases, for which see opinion.)

8. TAXATION. — The city of Galveston owns such a beneficial interest in the property of the Galveston Wharf Company, and of the dividends to arise from its use, as renders it improper for the city to impose taxes which would ordinarily deprive the city of a part of the dividends of the company which it is entitled to receive.

9. SAME. — The two-thirds interest owned by the wharf company is subject to state and municipal taxation.

10. EQUITY — TAXATION. — The rights of the city of Galveston and of the wharf company, in respect to dividends, resulting from the fact that the interest of one is taxable, and that of the other is not, must be adjusted as would the rights of persons holding shares of stock in other corporations, except that the city cannot diminish the dividends by the imposition of a tax in its own favor, not authorized by law.

11. INJUNCTION. — An injunction properly issued to restrain the city of Galveston from collecting taxes on its interest in the property of the Galveston Wharf Company.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Ballinger, Mott & Terry*, and *Trezevant & Franklin*, for appellant, cited: Const., art. VII, §§ 1, 2, 3; art. XI, §§ 5, 9; art. XII, §§ 3, 4, 5; Act February 8, 1851; City of Galveston v. Menard, 23 Tex., 349; Cooley on Tax., 130, 131; Burroughs on Tax., §§ 73, 142, 25; Dillon on Mun. Corp., §§ 64, 646; Townsend v. Greely, 5 Wall., 326; Klein v. New Orleans, 99 U. S., 149; N. O. v. Carrollton R. Co., 7 La. Ann. 148; Decision of Judge Woods, U. S. Circuit Court, Hitchcock v. Wharf Company, garnishing city wharf stock; Hart v. Burnett, 15 Cal., 530; Fulton v. Henlow, 20 Cal., 486; Fall v. Marysville, 19 Cal., 381; Law v. Lewis, 46 Cal., 552; Piper v. Singer, 4 S. & R., 354; Dir. of Poor v. School Dir., 42 Penn. St., 25; Gibson v. Hora, 37 Ia., 170; State v. Gaffney, 34 N. J., 133; Nashville Bank v. Tenn., 1 Swan, 269; People v. Salomon, 51 Ill., 52.

That injunction was appellant's proper remedy, they cited: Const., secs. 13 and 15, art. 8; Amended Charter, secs. 96 and 97; Cooley on Tax., 278–280; id., 341–2; Burroughs on Tax., 302; Blackwell, Tax Titles, 279–289; Clegg v. State, 42 Tex., 609; State v. Baker, 49 Tex., 763; Edmonson v. City of Galveston, 53 Tex., 157; Hayden v. Foster, 13 Pick., 492; Terrell v. Graves, 18 Cal., 149; Shimmin v. Inman, 26 Me., 228; Cooley on Con. Lim., 521; 1 High on Inj., §§ 517, 529; Johnson v. Hahn, 4 Neb., 143; Abbott v. Edgerton, 53 Ind., 196; Freemont v. Bowling, 11 Cal., 380; Webb v. Cutsinger, 48 Ind., 246.

*James B. Stubbs*, for appellee, on the proposition that the property was not exempt, even in part, from taxation, cited: Const., art. 8, secs. 2, 4; art. 11, sec. 9; Van Allen v. The Assessors, 3 Wall., 584, 598; Queen v. Arnold, 9 Ad. & Ell. (N. S.), 806; Richmond v. R. & D. R. Co., 21 Gratt., 604; Atkins v. Gamble, 42 Cal., 86; Baltimore v. B. & O. R. R. Co., 6 Gill, 288; Burroughs on Tax., 142, 385; 2 Wait's Actions and Defenses, 311; Dillon, Mun. Corp., § 776; City of Galveston v. Menard, 23 Tex., 349; Norris v. City of Waco, 57 Tex., 635; Fall v. Maryville, 19 Cal., 391; Cooley on Taxation, 145, 146, 149, 150, 151, 152–54, and notes, 199, 482, 123, note, 163; Red v. Johnson, 53 Tex., 287; Bank v. Tennessee, 104 U. S., 493; Erie R. R. Co. v. Penn., 21 Wall., 492; N. O. v. St. Anna Asylum, 31 La. Ann., 292; Stein v. Mobile, 17 Ala., 134; Brennan v. Bradshaw, 53 Tex., 338.

STAYTON, ASSOCIATE JUSTICE.— The nature and result of this action is correctly stated in the brief of counsel for appellant as follows: "Suit was brought by the Galveston Wharf Company, a corpo-

ration chartered in 1854, against the city of Galveston, to enjoin the sale of certain property advertised for sale for the payment of taxes to the city of Galveston from the wharf company, so far as the taxes were assessed on the one-third interest in certain wharf property in possession of the company, under compromise between the city and the company, confirmed by the legislature, on the ground that the said interest is the property of the city in trust for its present and future inhabitants, and is used only for public purposes, and not taxable by the constitution and laws of the state. An injunction was granted against the enforcement of the tax by the district judge of Harris county, in the absence of the district judge of Galveston county. But on the trial of the case before the latter judge the injunction was dissolved and the suit dismissed. There were various other objections to the tax as levied by the city, all of which were overruled by the judgment below, and some of which cannot be considered, owing to a failure to obtain the signature of the judge to the statement of facts. So far as the case is presented for review by this court, the pleadings and special agreement of the parties concurred in the facts."

The petition sets out very fully the history of the grant to M. B. Menard, on which is situated the city of Galveston, through which and subsequent legislation conflicting claims to the *flats* and wharf privileges arose between the city of Galveston and others, who were claiming through the grant to Menard, out of which grew the suit which was decided in this court in 1859. A full history of that case and the questions involved and decided will be found in City of Galveston *v.* Menard, 23 Tex., 349.

The ownership of the soil in the *flats* in front of the lots out to the channel was held, in that case, to be in Menard and his vendees, who were declared to have the right to devote it to wharf or other like purposes, free from the control of the public, under the qualification incident to all property, that it was not to be so used as to be a common nuisance, and at the same time, in view of the purposes for which the grant to Menard was made, it was held that the city had a like right to build and control wharves in front of the streets of the city, which might be extended to or over the *flats* to the channel.

Within a year after the decision was made in the case of The City of Galveston *v.* Menard, a suit was brought by the city of Galveston against the Galveston Wharf Company, which had been organized pending the prior litigation, and was composed of the owners of wharves sued in the former case, and other owners of wharves and wharf property. That action was transferred to Brazoria

county, where it was pending until April 1, 1869, when, by agree-
ment of parties, a consent decree was entered by the district court
of that county, which was intended by the parties to be a full set-
tlement and compromise of all matters in controversy between the
city of Galveston and the Galveston Wharf Company. The decree
thus rendered was confirmed by an act of the legislature of June 23,
1870. There therefore arises no question as to the binding force and
effect of that decree, which might arise but for the confirmatory act.

The assignments of errors are as follows:

1. "The court erred in its judgment in holding that the interest
or share of the city of Galveston in the property assessed and taxed
by the city of Galveston is subject to taxation by the city of Gal-
veston."

2. "The court erred in its judgment in holding that the sale
against which the writ of injunction was sued out could lawfully
be made to satisfy taxes assessed by the city of Galveston on its
own interest, held in trust for the public, in the property assessed
by it for taxes."

3. "Because the interest of the city of Galveston in the wharf
property, the subject of controversy, is held by the city of Galves-
ton in trust for its present and future inhabitants, and solely for
public purposes, as authorized by the legislature of the state, and is
not lawfully subject to taxation by the city of Galveston, the court
erred in its judgment in holding the same liable to such taxation."

The question which arises is: Has the city such interest in the
one-third interest in the property sought to be taxed as exempts it
from taxation by the city?

The character of interest held by the city in the Galveston Wharf
Company's property depends on the true construction to be given
to the decree of the district court for Brazoria county before re-
ferred to.

So much of that decree as is necessary to an examination and
determination of that question is as follows:

"It is considered, ordered, adjudged and decreed by the court,
that the present capital stock of the Galveston Wharf Company,
consisting of twelve thousand four hundred and forty-four shares of
stock of $100 per share, amounting in the aggregate to $1,244,400,
shall be increased the full one-half thereof, viz.: by six thousand
two hundred and twenty-two shares of $100 each, amounting to the
sum of $622,200, which said stock of said sum of $622,200 shall
be the property of the mayor, aldermen and inhabitants of the city
of Galveston, and the same shall stand and remain on the books of

said company as the property of said mayor, aldermen and inhabitants of the city of Galveston, *and the equal, undivided one-third of the property of said company, to be consolidated and vested in it by this decree, shall be owned by said city, and represented by its said stock,* and the said stock, and the rights and interests therein, *and in said property,* of said mayor, aldermen and inhabitants of the city of Galveston, shall be *in trust for the present and future inhabitants of the city of Galveston, and all and every part thereof shall be inalienable, and not subject to conveyance, assignment, transfer, pledge, mortgage, or any liability for debt whatever, in any other manner than by the vote of four-fifths of all the qualified voters of said city in favor of some clear and specific proposition therefor.* The dividends and net earnings of said stock shall be regularly paid to said mayor, aldermen and inhabitants of the city of Galveston, *to be disbursed and expended for the public good and benefit of said present and future inhabitants of said city."*

Said decree then proceeds to fix the respective representation and rights of said city and company on the board of directors, giving the city three directors in said board of nine, one to be the mayor, and one of the committee on finance, another an alderman, and the third an alderman or citizen, but to be elected by the council. And said decree further provides:

"In consideration of all which, it is further agreed between the parties, and is now considered, ordered, adjudged and decreed by the court, that all the property, rights and claims of every kind and description (except certain lots and property hereinafter specified) of the said Galveston Wharf Company, and also all the right, title, interest and claim of every kind and description whatsoever, of the said mayor, aldermen and inhabitants of the city of Galveston, in and to all the land and ground extending from the shore or ordinary high-water mark of the Island of Galveston to the channel of the bay or harbor, from and including the street known on the map and plan of said city of Galveston as Ninth street, on the east, to and including the street known as Thirty-first street, on the west, including all the ground known as the Flats within said limits, and also all rights, capacity, powers and claims of said plaintiffs to build and erect wharves and take and receive wharfage therefor, at the end of streets now or hereafter running or extending to said channel, be and the same are hereby vested in the said Galveston Consolidated Wharf Company, and to be henceforth the corporate property, right and title of the said Galveston Wharf Company, and owned, held, possessed, controlled, used and administered by

said company — all the said united and consolidated property, rights and claims, being represented by said aggregate of $1,866,600 — the original two-thirds thereof held by the present stockholders, and one-third by the said plaintiff in trust as aforesaid."

Said decree further provided that the result of certain suits then pending should inure to carry out said decree and compromise, and also excepted from its operation certain lots and blocks south of avenue A, in said city, and others named, the benefit of which was to belong to the stockholders of said company, prior to the compromise; and said decree further provided as follows:

"It is further the agreement and intention of the parties that this settlement shall, if practicable, result in and secure the final settlement of all controversy, and prevent future controversy in regard to all the wharf privileges in front of the city of Galveston, *and that the whole of said wharf privileges shall be united and consolidated in the present parties hereto.*"

The true construction of this decree is to be arrived at by considering the whole decree, which had for its object the settlement of the conflicting claims of the respective parties to the action.

The city was controverting the ownership of the wharf company, claiming through Menard, to the property in the *flats*, and the resultant right to maintain wharves; and the wharf company was controverting the right of the city, not only to the property in the *flats*, but also the right of the city even to use, for wharf purposes, the termini of its streets on the bay.

The title of the one to property in the soil embraced in the *flats*, with the right to use it for wharf and other purposes, had been practically determined by the former suit; as had been the right of the city to use for wharf purposes, notwithstanding the ownership of the soil had passed by the grant to Menard, that part of the *flats* at the termini of its streets.

The last part of the decree, above set out, evidences the fact that it was intended to consolidate and to put into the hands of the Galveston Wharf Company all the wharf *privileges* possessed by both or either of the contesting parties; and that this was done, both parties agree; but it is claimed by the one that all the property vested, by the decree, absolutely in the wharf company; and by the other, that one-third of the entire consolidated property, not excepted from the operation of the decree, vested in the city of Galveston, subject only to the use and control by the wharf company for the purposes for which the consolidation was made.

The latter part of the decree, in terms, vests in the "Galveston

Consolidated Wharf Company " all the property, rights and claims of every kind and description (except certain property specified) of the Galveston Wharf Company; as did it all the right, title, interest and claim of every kind and description of the city of Galveston in and to all land and ground embracing the *flats*, between and inclusive of Ninth and Thirty-first streets, and also all rights, capacities, powers and claims of the city to erect wharves and receive wharfage at the ends of streets then extending, or to be extended, to the channel; and it declared those things and rights " to be henceforth the corporate property, right and title of the said Galveston Wharf Company, and owned, held, possessed, controlled, used and administered by said company."

The purpose of this part of the decree was, evidently, to vest in the consolidated company, which, in all instances but one, is called " The Galveston Wharf Company," the rights, even of property, as well as of use, which had formerly been owned or claimed by the wharf company and the city, or either of them, except as limited on the face of the decree.

The language used seems, in many respects, sufficient to vest the absolute title in all property and rights to which it applies in the consolidated company; but when considered in connection with the language which immediately follows, it is not inconsistent with an intention to give to the stockholders of the wharf company existing before consolidation, title to two-thirds of the property, and to the city one-third; all to be under such qualified ownership and dominion of the consolidated company as was necessary to enable it to carry out the purposes for which the consolidation of the respective interests was made.

The beneficial interests to accrue from profits, as well as the proprietary interests which would inure to the respective parties in interest in case of dissolution of the Galveston Wharf Company, are evidenced by the shares of stock of which the parties were respectively declared the owners and holders.

It is not clear from this part of the decree whether the declaration in reference to the holding of " one-third by the said plaintiff (the city) in *trust* as aforesaid " refers to the shares of stock or to the property as well, but the preceding part of the decree, to which reference is made, which relates to the property as well as the shares of stock, renders it highly probable that it was in this connection used in relation to the property as well as the shares of stock; it is, however, immaterial in reference to the matter under consideration, whether it refers to one or both, for in either event

the beneficial interest to arise from the use of the property would inure to the benefit of the "present and future inhabitants of the city of Galveston."

Prior to this decree, it will be remembered that there was a contest about the ownership of the property, as well as the right to use all or parts of it, and the latter part of the decree was evidently intended to settle that question by vesting, it may be, the absolute as well as the qualified rights held by the respective parties in or to the property in the consolidated company, as a starting point for the clear investiture of unquestioned title in each to shares in the property, as well as the profits to be derived from its use, to which, by the agreement made the basis of the decree, each party would be entitled.

The former part of the decree evidences that it was thought such a course was necessary before the rights of the parties, as they desired them to exist in the future, could by the decree be determined.

The more natural order would have been to vest the property in the consolidated company in the first part of the decree, and in the subsequent part to have vested in the respective parties the property or rights which it was agreed they should severally own, if separate ownership was desired or thought necessary.

However this may be, the order in which things were done, by the decree, cannot control its construction; for the true inquiry is, What does the entire decree show was the declaration of law, made on the agreement of the parties as to the rights of the respective parties?

The first part of the decree, after directing the issue of additional shares of stock and determining the number of shares which each of the parties should have, declares that "*the equal undivided one-third of the property* of said company (the consolidated company) *to be consolidated and vested in it by this decree* shall be owned by said city, and represented by the said stock and the rights and interests therein, *and in said property* of said mayor, aldermen and inhabitants of the city of Galveston, shall be in trust for the present and future inhabitants of the city of Galveston, and all and every part thereof shall be inalienable, and not subject to conveyance, assignment, transfer, pledge, mortgage or any liability for debt whatever, in any other manner than by the vote of four-fifths of all the qualified voters of said city in favor of some clear and specific proposition therefor."

This part of the decree declares what shall be the rights of the parties then before the court, *after the rights and property of both*

*were consolidated and vested by the decree in the consolidated company.*

It would seem that the declaration as to how the ownership should stand after the property and rights of both parties should by the decree be vested in the one in whose name the business was to be transacted in the future, should control that part of the decree by which the contemplated consolidation was made.

Taken all together, the apparent intent of the decree is to vest in the city of Galveston not only a right to receive one-third of the dividends, but also the further right to one-third of the entire property of the company, as consolidated; it being, however, subject to the control of the Galveston Wharf Company for the uses and purposes for which the consolidation was made.

This view is much strengthened by the fact that a power is recognized, and a method is provided, in the decree, by which not only the right and interests of the city in the stock which it holds, but also in the property, *i. e.,* an undivided one-third of the whole property consolidated and vested in the Galveston Wharf Company, by the decree, may be alienated by the city.

Such a power of alienation is inconsistent with any other relationship to the property than that of ownership, it not appearing that a naked power was intended to be conferred.

The *trust* spoken of in the decree is evidently one imposed not only on the Galveston Wharf Company, but also on the municipal government of the city of Galveston for the benefit of the inhabitants of that city.

We are of the opinion that the decree vests in the city of Galveston title to an undivided one-third of the property consolidated by the decree, and that it clothes the wharf company with a power to be exercised in its management through the directory to be selected in which the city is to be represented as provided by the decree.

Section 1, article 8, of the constitution in providing for taxation seems to exempt all property belonging to municipal corporations from taxation; but section 9, article 11, provides: " The property of counties, cities and towns owned and held only for public purposes, such as public buildings and sites therefor, fire engines and the furniture thereof, and all property used or intended for extinguishing fires, public grounds, and all other property devoted exclusively to the use and benefit of the public, shall be exempt from forced sale and from taxation."

It is contended that under this provision of the constitution, even

if the one-third of the property belongs to the city, it is subject to taxation, because not such property, and so used as to be entitled to the exemption.

It is property held only for purposes essentially public, and may be said to be devoted exclusively to the use and benefit of the public; indeed, it would be hard to imagine a use more essentially public than is that of a wharf which extends along the front of a city, and upon which is received a large part of the articles which go to make up the inward and outward commerce of the state. It is a property which all persons and vessels have the right to use, under proper regulations, and without the use of which the business of the city could not be conducted. That compensation is received for its use does not withdraw from it its public character. Dillon on Municipal Corporations, 103–113.

There may be property owned by municipal corporations which would be subject to taxation, but the enumeration of certain things in the section of the constitution quoted, as exempt from taxation, was not intended to operate as a declaration that things not enumerated were subject; but simply to indicate the character of things, and the uses to which they must be appropriated, in order to be entitled to the exemption.

The decree provides that dividends received by the city "shall be disbursed and expended for the public good and benefit of said present and future inhabitants of said city."

In the absence of any law expressly providing otherwise, such property as a municipal corporation owns and uses for a public purpose is held not to be affected by general laws regulating taxation. Cooley on Taxation, 130, 131; Dillon on Municipal Corporations, 773, 774, and cases cited in the notes.

Many cases exist in which examples are given of the character of property and uses to which it must be put, when owned by municipal corporations, to make it, within the meaning of the law, property "held only for public purposes, or devoted exclusively to the use and benefit of the public," which, in this case, it is not deemed necessary to review, among which are the following: Klein v. New Orleans, 99 U. S., 150; Water Commissioners v. Gaffney, 34 N. J., 131; Gibson v. Howe, 37 Iowa, 170; Fall v. Mayor of Marysville, 19 Cal., 392; Piper v. Singer, 4 S. & R., 354; Directors of the Poor v. School Directors, 42 Pa. St., 24; Louisville v. Commonwealth, 1 Duval, 295; Trustees v. Champaign Co., 76 Ill., 185.

The words "held only" and "devoted exclusively," used in the section of the constitution quoted, would seem to convey the idea

that a municipal corporation may own property which will not be exempt from taxation; if so, the property involved in this case is not of that character; and it will be time enough to consider what kinds of property, if any, belonging to a municipal corporation, is subject to taxation when a case requiring its decision is presented.

If, however, the decree did not vest in the city the title to one undivided one-third of the property of which it purports to dispose, there can be no doubt that the decree vests in the city such a beneficial interest in the property, and in the dividends to arise from its use, as would, on principle, render it improper for the city to impose taxes which would indirectly deprive it of a part of the dividends, which, under the decree, it was evidently intended the city should receive.

In other words, can the city tax the property to the extent of its beneficial interest therein, when to do so will diminish its dividends, and in addition to this incur the increased expense of collecting the tax.

In our opinion, it might just as well tax any other property it owns, and pay the tax out of its own treasury, with a loss to itself of the cost of collecting.

If the only beneficial interest of the city be to dividends, these cannot be declared and paid until the expenses of operating and keeping up the entire property is first deducted; for dividends are not paid on gross receipts; hence, if the city can tax the entire property, the tax so levied and collected must be deducted before a dividend is paid, and thus the dividend be diminished.

A power to tax, under such circumstances, involves the power of a municipal corporation to tax itself or its own property, which it certainly cannot do, for obvious reasons.

There are no equities arising in favor of the city from the fact that the dividends which the city will receive are diminished by the taxes paid to the city on the interest of the wharf company in the property, for the city receives the entire tax, and only accounts for one-third of it in receiving a diminished dividend, caused by this tax, as do the other stockholders.

If the dividends of the city will be diminished by the payment of state and county taxes on the interest owned by the wharf company, this furnishes no reason to sustain the imposition of an unauthorized tax. It is true that the taxation of two-thirds of the property, which, under the decree, is the interest of the wharf company, by the state and county, will diminish the dividends which the city will receive; but this results from the fact that under the

law that property is subject to taxation, as is the property of other persons, and its association in ownership with other interests not subject to taxation does not create an exemption in its favor. No provision is made, in the decree, for adjusting what may seem to be the equities of the parties in reference to dividends, resulting from the fact that the part of the property owned by the wharf company is subject to taxation, while the part owned by the city is not; but in the absence of some such provision, the rights of the parties would have to be adjusted in reference to dividends, as would the rights of persons holding shares of stock in other corporations, except that the city cannot diminish the dividends by the imposition of a tax in its own favor not authorized by law.

The rights of the parties, in respect to such matters, rest as fixed by the decree, which, having been confirmed by the legislature, must be held to indicate the will of the law-making power, as fully as though embodied in a statute. The legislature might have withdrawn from the city the right to receive any dividends at all.

The court below erred in dissolving the injunction sued out to restrain the city from collecting the tax on an undivided one-third of the wharf property, and its judgment will be reversed and judgment will be here rendered perpetuating the injunction heretofore granted, and adjudging costs of the court below and of this court in favor of the appellant against the appellee.

And it is accordingly so ordered.

*Reversed and rendered.*

[Opinion delivered December 19, 1884.]