

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Julian Montgomery
State Highway Engineer
Austin, Texas

Overruled by 1746-A

Dear Sir:

Opinion No. 0-1746
Re: Are municipally owned and
operated motor busses exempt
from the payment of the li-
cense fees provided for in
Article 6675a-2 et seq.,
Vernon's Annotated Civil
Statutes.

We have for consideration your letter of November
28th wherein you request an opinion of this department. To
gain assurance that we understand the issue correctly we
quote at length from your letter:

"Recently our attention was called to the
fact that city busses operating on the streets
of the City of San Angelo were using exempt
license plates issued by this Department. Upon
investigation, we found that the busses are
owned and operated by the City of San Angelo.
A fare of five cents is collected for transport-
ing passengers in the same manner as the fare
is collected by any public service company per-
forming similar services in other cities.

"It is further found that we have in our
files affidavited applications from the City of
San Angelo requesting the issuance of such ex-
empt plates, and that such applications state
that the vehicles on which the plates are to be
used are the property of and to be used exclusive-
ly in the service of the City of San Angelo.

"Article 6675a-3 and Article 6675a-3aa au-
thorize the Highway Department to approve the
design of exempt license plates and to issue
such plates without the payment of registration
fees.

"Please advise us if the use of the busses

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Julian Montgomery, Page 2

by the City of San Angelo in the transporting of passengers for compensation and hire is such use as would entitle the City of San Angelo to receive exempt license plates without the payment of registration fees under the articles above referred to."

Article 6675a-3, Vernon's Annotated Civil Statutes, after setting out the modus operandi of application for required registration of a motor vehicle under Article 6675a-2, provides as follows:

". . . Owners of motor vehicles, trailers and semi-trailers, which are the property of, and used exclusively in the service of the United States Government, the State of Texas, or any County, City or School District thereof shall apply annually to register all such vehicles, but shall not be required to pay the registration fees herein prescribed, provided that affidavit is made at the time of registration by a person who has the proper authority that such vehicles are the property of and used exclusively in the service of the United States Government, the State of Texas, or County or City or School District thereof, as the case may be . . . ."

Article 6675a-3aa, provides that:

"Before the delivery of license plates to anyone engaged exclusively in the service of and operating vehicles which are the property of the United States Government, or the State of Texas, or any county, or cities thereof, such application shall have the approval of the State Highway Department. . . ."

Further, we deem it advisable at this point to set out the following constitutional and statutory provisions insofar as they deal with the subject of exemptions and possibly appear applicable to our problem.

Article 8, Section 1, Constitution of Texas, provides, in part, as follows:

". . . All property in this State. . . other than municipal, shall be taxed. . . ."

It will be observed that Article 8, Section 1, would seem to exempt from taxation all the property held by a municipal corporation; however, Article 11, Section 9, provides:

"The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites there- for. Fire engines and the furniture thereof, and all property used, or intended for extin- guishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt . . . from taxation."

The enumeration of these certain exempted articles in the section of the Constitution quoted was designed to indicate the character of things, and the uses to which they must be appropriated as a condition precedent to exemption. See Galveston Wharf Co. vs. Galveston, 63 Tex. 14. There- fore, clearly there may be property owned by a municipal cor- poration subject to taxation. (id)

Revised Statutes, 1925, Article 7150, provides:

"The following property shall be exempt from taxation, to-wit:

"All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof . . . ."

Counties, cities, and towns are municipal corpor- ations. Constitution, Article 11. They are political sub- divisions of the State. Id. Also see Corp. of San Felipe de Austin vs. State, 111 Tex. 108, 229 S. W. 845, City of Abilene vs. State, 113 S. W. (2d) 632.

Assuming that the Legislature has the authority to enact these statutory provisions granting exemptions, it is perforce of the constitutional provision contained in Article 8, Section 2, whereunder "The Legislature may, by general laws, exempt from taxation public property used for public purposes." Therefore, any consideration of these statutes enacted by the Legislature pursuant to the power granted it in Article 8, Section 2, should, if possible,

be viewed in the light of the constitutional provisions
set out above.

In the cases wherein the courts of this State
dealt with situations which involved or pertained to one
or more of the statutory and/or constitutional provisions
referred to above there has been consistent difficulty
encountered in the proper ascertainment of what consti-
tutes "public property" and further what is a "public use."
In many cases it involves the laborious problem of border-
line construction.

The leading case of Corporation of San Felipe
de Austin vs. State, supra, advances the following as a
helpful aid to possible solution; Phillips, C. J., speak-
ing for the Supreme Court:

"The test is not whether the property is
used for governmental purposes. That is not
the language of the Constitution. This court
has never adopted that narrow limitation and
the weight of authority is opposed to it. Much
public property of municipalities exempt from
taxation has, and can have, no governmental
use. The test is whether it is devoted ex-
clusively to a public use." Citing Galveston
Wharf Co. vs. Galveston, 63 Tex. 14, wherein
city owned stock in a wharf corporation was
held exempt from taxation under the Constitu-
tion. Chief Justice Phillips commenting on
that case said:

"It would be difficult to find anything
'governmental' in the public use of a wharf."

The San Felipe de Austin case held that land
granted the municipality by Mexico and used by the inhabi-
tants thereof as a public "common" is not taxable. See
also the case of Daugherty vs. Thompson, 71 Tex. 192.

However, it is our opinion that we would not be
justified in looking to Article 11, Section 9, of the Con-
stitution nor Article 7150, Revised Civil Statutes, 1925,
for a solution of the issue now confronting us. That con-
stitutional proviso and that statute speak of the word "tax".
Our situation involved not a "tax" but a "registration" or
"license fee". In the case of Adkins vs. State Highway De-

Honorable Julian Montgomery, Page 5

partment, 201 S. W. 226, in upholding the validity of the original act requiring registration of motor vehicles, the court said:

> "We . . . conclude that the sum of money which appellant is required to pay under the laws, Acts 35th Legislature, ch. 190 and 270, as amended at First Called Session, 35th Legislature, ch. 31, here involved is not a tax . . ., but a license fee for the privilege of operating his automobile on the public highways of the state."

In other words, the fee provided for in Article 6675a-1 et seq. partakes not of the nature of an exaction designed primarily for revenue raising purposes; i.e., a tax, but is a reasonable impost levied and required to be paid as a condition precedent to the privilege of using the highways of this state. Consequently, we feel that we are not controlled in the rendition of our opinion by any constitutional or statutory provisions concerning or pertaining to "taxes" nor the cases construing them.

In Louwein v. Moody by the Commission of Appeals, 125 S. W. (2d) 989, the court held that a person owning and operating motor vehicles under contract with the Federal Government for the purpose of transporting the mail was exempt from the payment of the registration fees for the said vehicles under the terms of the article, supra. The court so held because it found that the "practical effect" of the imposition of such an exaction as a registration fee would be to "increase the cost to the United States of execution of its power and duty (Section 8, ch. 7, Art. 1) to establish and operate post offices, etc. . . ."

The situation before the court in the Louwein case may be distinguished from our fact situation in this manner: In the Louwein case the service or activity involved, as the court so stated, was pursuant to a "duty or power" imposed upon the Federal Government by express provision of the United States Constitution. Nowhere in the laws of this State are we able to find any provision or provisions making it the "power or duty" of a municipal corporation to establish, operate, or maintain a system of motor busses.

The case of San Antonio Independent School District

v. Water Works Board of Trustees, 120 S. W. (2d) 861, announce as follows a well known principal of law:

> "A municipal corporation is invested with two kinds of powers or functions, governmental and proprietary. Governmental functions are exercised in the administration of the affairs which affect the public generally, and are performed by virtue of powers conferred upon the city as an agency of the state. Proprietary functions pertain to business affairs administered for the special benefit of the urban community embraced within the corporate boundaries."

The first power is of a public nature whereas the second or proprietary function partakes of the nature of a private power.

> "In the exercise of its private powers, generally the municipal corporation is treated as a private corporation or individual and is subject to all the obligations and is entitled to all the benefits of the private law." See McQuillin Municipal Corporation, Vol. 1, Sec. 364, at p. 905.

In the annotated note in 3 A. L. R. 1439 at p. 1441, it is aptly said:

> ". . . Where the state steps down from her sovereignty and embarks with individuals in business enterprises, the same considerations do not prevail. The state does not engage in such enterprises for the benefit of the state as a state, but for the benefit of individuals . . . ."

Further in the same note it is observed:

> "When an income or profit is derived from municipally owned property, not as an incident to its use as a public agency, but from its use primarily and principally 'for the purpose of producing revenue, it cannot be said to be devoted to public use, and is, therefore subject to taxation'." (Citing numerous cases)

We are inclined to think that Article 6675a-3, supra, exempting publicly owned vehicles from registration

fees should be viewed in the light of the familiar principal, that a statutory grant of exemption is never presumed, must be clearly conferred in plain and unambiguous terms, and should be strictly construed. The power of a state to levy fees or taxes is an inherent attribute of its sovereignty and "essential to the perpetuity of its institution"." This being true, the person who asserts a right to exemption should be required to "justify his claims by the clearest grant" or the "express provisions of some law." See C. J. 393, 394, and cited cases. 26 R. C. L. 313, Sec. 274.

Chief Justice Cureton, in the case of Jones v. Williams, 45 S. W. (2d) 130, 121 Tex. 94, 74 A. L. R. 983, said:

"Exemptions from taxation are regarded not only as in derogation of sovereign authority, but of common right as well. They must be strictly construed, and not extended beyond the express requirements of the language used. . . ."

The basis upon which this rule of strict construction rests is ably expressed by a quotation in 7 Texas Law Review 385:

"Exemptions from the burdens of taxation which the great masses of the people are called upon to sustain, as a requisite of civil government, are only favored in legislation upon the theory that the concession is due as a quid pro quo for the performance of a service essentially public, and which the state thereby is relieved pro tanto from the necessity of performing, such as works of charity and education freely and charitably bestowed. . . . Without that concurring prerequisite, an exemption becomes essentially a gift of public funds, at the expense of the taxpayer, and indefensible both under our public policy of equal taxation and our constitutional safeguard against illegal taxation."

We believe that the registration fee involved here is no more than a reasonable compensation for the use of the highways of this State; that the funds derived therefrom are expended for the purpose of construction, mainten-

Honorable Julian Montgomery, Page 8

ance, and repair of our highway system; that an exemption from the payment of this fee necessarily is conducive or productive of inequality in contribution to the common burden of vital highway construction and maintenance; and that the levy and collection of this fee would not be a direct burden upon an instrumentality of governmental administration, but is only a remote, if any, influence upon the exercise of the functions of government.

It would appear, further, that the exemptions provided for in Article 6675a-3 are aimed at the protection of the operations of the government and the immunity there prescribed does not extend nor apply to anything lying outside or beyond governmental functions and their exertions; and that the City of San Angelo is, in the administration of the affairs of these motor busses, the owner of its system in a proprietary rather than in a public capacity, and therefore must assume and bear the burdens as well as the benefits derivative from such ownership.

It will be urged, perhaps, that the motor busses are operated on a non-profit basis and therefore cannot be classed as a proprietary activity within the strict and ordinary meaning of the term. To this, we must inquire of what assurance there might be that this will remain so in the future and who is to ordain the point at which the business ceases to be non-profitable and becomes profit-producing.

Further, it may be contended that these busses operate solely within the confines of the city and consequently, do not travel upon the highways. Article 6675a-1(m), Vernon's Annotated Civil Statutes, provides:

"'Public Highway' shall include any road, street, way, thoroughfare or bridge in this State not privately owned or controlled for the use of vehicles over which the State has legislative jurisdiction under its police power."

The case of City of Texarkana v. Southwestern Telephone & Telegraph Co., 106 S. W. 915, 48 Tex. Civ. App 6, well states the following principle:

"The public highways of the state, including even the streets and alleys within incorporated towns and cities belong to the State, and

the supreme power to regulate and control them
is lodged with the people through their repre-
sentatives -- the Legislature."

In conclusion, you are advised that, in our opin-
ion, municipally owned and operated motor busses, whose
only claim to exemption from the payment of the registra-
tion fees provided for in Article 6675a-2, et seq. is that
they are engaged in intra-city transportation of fares,
are not sufficiently imbued with civic governmental func-
tions as to come within the meaning of the phrase, ". . .
used exclusively in the service of the . . . city . . .",
and are therefore not exempt. To hold otherwise would
seem to violate the spirit of the Act and defy the inten-
tion of the Legislature.

The incidental question of whether these partic-
ular motor vehicles are to be classed, for the purposes of
registration, as "Motor Busses" or "Passenger Cars" under
the provisions of Article 6675a-1 (Definition of Terms) is
to be determined by the proper administrative authorities
charged with that duty, after investigation and ascertain-
ment of those facts peculiar to this situation.

Trusting that the above satisfactorily answers
your question, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Walter R. Koch
Walter R. Koch
Assistant

By Grundy Williams
Grundy Williams

CW:LM

APPROVED JAN 10, 1940
Gerald C. Mann

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN