

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

**AUSTIN 11, TEXAS**

Honorable H. Pat Edwards
Civil District Attorney
Hall of Records
Dallas, Texas

Dear Sir:  Attention:  Mr. Frank McCullough

Opinion No. O-4285

Re:  Are the properties, the title
to which passed to the City
of Dallas under the Will of
Dr. W. W. Samuell, exempt
from taxation?

We are in receipt of your letter requesting an
opinion of this department, which reads in part as follows:

"The City of Dallas, through its attorney,
has presented a resolution to the Dallas County
Commissioners' Court, requesting that certain
properties to which it obtained title under Dr.
W. W. Samuell's Will be exempt from State and
County taxes. Thirty-four tracts are set out
in the resolution. The interests passing to the
city under this will range all the way from com-
plete title to a 1/3 interest in some of the
tracts. I am attaching a copy of the letter ac-
companying the resolution.

"Some of the properties are adapted to pub-
lic park use and are now being used as such, and
I have no doubt but that these are properly exempt
from taxation. However, some of the properties
at a future date may be sold and the proceeds
therefrom put into a trust fund. And further,
other portions of the property can not be sold
and the income therefrom is to be used for park
purposes. We are confronted with the question
as to whether the properties in the last two
catagories are exempt from State and County taxa-
tion because of the city's interest therein.

Honorable H. Pat Edwards, Page 2  (O-4285)

"I am submitting the following two ques-
tions with the request that you be kind enough
to give us your opinion thereon:

"1. Are the properties, the title to which
passed to the City of Dallas under the Samuell
Will, and which may be sold at some future time
depending upon the city's election, the proceeds
therefrom to be put in a trust fund for park pur-
poses, subject to taxation?

"2. Are the properties passing under said
will which can not be sold, and the income from
which is to be used for park purposes, subject to
taxation?

"  .  .  .

"It appears, . . . , in Dallas County, that
it has been a long existing custom for the Com-
missioners' Court to pass orders, directing the
Tax Assessor to place property on the exempt rolls,
and in conjunction with your answer to question
propounded above as to the exemption of the prop-
erty willed to the City of Dallas by W. W. Samuell,
we would appreciate your opinion as to the neces-
sity for and the legal effect generally of an
order of the Commissioners' Court purporting to
direct the Tax Assessor to place property on his
exempt rolls."

We have carefully examined the judgment construing
the will and correspondence attached to your opinion request
but as they are copies we assume that you do not wish to have
either returned and are therefore retaining them for our files.

In order to answer your request as set out we are
grouping the properties as set out in the judgment which con-
strued the Samuel Will as follows:

1. Our first answer will therefore include:

(a) The tracts of land adjudged to be fit for and
adapted to park purposes by the Park Board of the City of
Dallas.

2. Our second answer will include:

(b) The tracts of land physically and economically
unfit and incapable of being put into actual parks, but which

are commercially improved and revenue-bearing and which
have been ordered to be retained in order to provide rev-
enues to be used in improving and maintaining the lands
mentioned in paragraph (a) or to be exchanged for sole
title to such tracts.

(c)  The tracts of land physically and economical-
ly incapable of being put to actual park uses, or being
used for revenue, the sale of which has been decreed in
order that the proceeds therefrom might be used for the
purposes expressed in paragraph (a).

We first desire to point out that the various
undivided interests in the properties devised to the City
of Dallas passing to others than the Park Board of Dallas
are subject to taxation under authority of Galveston Wharf
Company v. Galveston, 63 Tex. 14, 25.  The properties pass-
ing to the City Park Board, that is those properties men-
tioned in paragraph 7 of the court's judgment construing
the Will in clauses (a), (b) and (c) if they are entitled
to tax exemption, would be exempt after December 31, 1937,
the date of Dr. Samuell's death, under authority of Carswell
& Company v. Habberzettle, 87 S. W. 911, and opinion of the
Attorney General No. 0-2124, both of which hold that lia-
bility for taxes is fixed as of January 1, of each year.
Unless the Will provides otherwise title would vest immed-
iately in the various devisees thereof as is held in Long
v. Shelton, 155 S. W. 945, (Error Refused), in the follow-
ing language:

"An estate by devise takes effect immediate-
ly upon death of the testator unless otherwise
directed, and property then passes to the devisee.
The different legal requirements as to probating
and recording wills are merely designed as means
to substantiate, preserve and give notice of such
instrument as evidences of title.  See also Arti-
cle 3314, R.C.S. of Texas, and 44 T. J. 778, et
seq."

Our first answer is that the property involved is
not subject to taxation by reason of the following authorities:

Article VIII, Section 1, of the Texas Constitu-
tion, provides that:

"Taxation shall be equal and uniform.  All
property in this state, whether owned by natural
persons or corporations other than municipal,

shall be taxed in proprotion to its value which shall be ascertained as may be provided by law."

Article VIII, Section 2, of the Constitution of Texas, provides in part as follows:

"All occupation taxes shall be equal and uniform from the same class and subjects within the limits of the authority levying the tax; but the Legislature may, by general law, exempt from taxation public property used for public purposes; . . . and all laws exempting property from taxation other than the property above mentioned shall be null and void."

Article XI, Section 9, of the Texas Constitution, provides that:

"The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor. Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing."

Article 7150, R.C.S. 1925, contains the following previsions:

"The following property shall be exempt from taxation, to-wit:

". . .

"4. Public property. - All property, whether real or personal, belonging exclusively to this state, or any political subdivision thereof, or the United States. . ."

As the property involved will be used for "public purposes" we believe that the tracts of land set aside as parks as described in Section 7, clause (a) of the court's judgment construing the Will of Dr. Samuell are exempt from taxation.

We have been unable to find any authority directly in point on our second answer as to the other classes of properties which will not be used for parks.

In the case of City of Abilene v. State, (writ dismissed) 113 S. W. (2d) 631, the City of Abilene had acquired land in Jones County for the purpose of a reservoir site for impounding water for the use of the City. The City had secured from the proper authorities the necessary appropriation of water, done engineering work and authorized the issuance of bonds, but had been unable to acquire all the land necessary and had not done any construction work or actually used any of the land for reservoir purposes. For five years prior to the suit the City had been leasing the land, but all leases had been subject to the right to build the dam and reservoir at any time, the City not having abandoned its intention to accomplish the purpose for which the lands were acquired. The court held:

"It is, therefore, our view that when the facts of a given case establish the ownership of property by municipal corporation, which has been acquired for an authorized public purpose, and the purpose for which it is owned and held has not been abandoned, such property is to be regarded as used for public purposes, and the Legislature has the power to provide by general law for its exemption from taxation."

In the case of the State v. City of Houston, et al, 140 S. W. (2d) 277, 278, the court expressed its conclusion in the following language:

"The fact that the property was rented to private persons, and was therefore closed to the public, does not necessarily determine that such property is not held for a public purpose. Certainly the stipulated facts lead to the conclusion that so much of the property as was not bought to be devoted directly to the opening of the Boulevard was bought for the purpose of conserving the 'Roadways to Turning Basin Funds'. If the property was bought and is being held to preserve such fund, how can it be said that it was not bought, and is not being held for a public purpose?

"Cleraly the fact that the City is renting the property to private persons pending the interval before its sale cannot change the charac-

ter of the City's interest in the property when the City does sell such property, it must necessarily acquire the proceeds to 'Roadways to Turning Basin Funds and Bonds'."

In the case of State v. City of Houston, supra, the court decreed exemption on the theory that the property was actually bought and used for public purpose and any surplus was simply being held pending sale, while in our case the property itself will not be used for a public purpose. In the case of the City of Abilene v. State, above, the court decreed tax exemption on the theory that the property was held for an authorized public purpose which had not been abandoned but was only temporarily held in abeyance. Our particular facts indicate that the specific properties will never be used for public purposes, but will be sold or leased for revenue purposes. In the case of City of Sherman v. Williams, 19 S. W. 606, the property declared tax exempt was rented by the City to private individuals pending sale upon which the proceeds therefrom would be placed directly in the tax fund so that it stood as a substitute for taxes due to the City, while the property herein involved does not stand as a substitute for any fund but is held only for the benefit of the park fund.

The case of Santa Rosa Infirmary v. City of San Antonio, 259 S. W. 926, 931, discusses tax exemptions in the following language?

"But, as the Constitution requires the property, as a prerequisite to its right to exemption, to be exclusively used by the charitable institution, it is apparent, if any part of it is rented out and the relation of the landlord and tenant created, that very fact would necessarily destroy the exclusive use necessary to be retained by the owner to bring its property within the plain terms of the Constitution, and it has been therefore held, as it was in that case (Morris v. Mason, 5 S. W. 519) and in State v. Settegast, (Tex. Com. App.) 234 S. W. 925, that the leasing of all or any part of the charitable institution's property to those not themselves engaged in a wholly charitable work, or the occupancy of even a part of the property by others under what amounts to an equivalent situation (City of Houston v. Scottish Rite Association, 230 S. W. 978), destroys the exempt character of the property, and it is plain that in these cases there could have been no other holding.

"The constitutional requirement is twofold; the property must be owned by the organization claiming the exemption; it must be exclusively used by the organization, as distinguished from a partial use by it, and a partial use by others, whether the others pay rent or not. City of Houston v. Scottish Rite, etc., supra."

In St. Edwards College, v. Morris, 17 S. W. 512, 513, the following language is used:

". . . Under the statutory exemption from taxation of lands connected with public colleges, etc., the connection of buildings and of lands referred to, may not be one of mere contiguity, but one of connected use, for a common purpose, public in its nature and not foreign to the leading purposes for which public colleges and academies are established and maintained."

In Galveston Wharf Company v. Galveston, 63 Tex. Rep. 14, at page 23, the city's interest in a wharf was held exempt in the following language:

"It is property held only for purposes essentially public, and may be said to be devoted exclusively to the use and benefit of the public; indeed, it would be hard to imagine a use more essentially public than is that of a wharf which extends along the front of a city, and upon which is received a large part of the articles which go to make up the inward and outward commerce of the state. It is a property which all persons and vessels have the right to use, under proper regulations, and without the use of which the business of the city could not be conducted. That compensation is received for its use does not withdraw from its public character.

"There may be property owned by municipal corporations which would be subject to taxation, but the enumeration of certain things in the section of the Constitution quoted, as exempt from taxation, was not intended to operate as a declaration that things not enumerated were subject; but simply to indicate the character of things, and uses to which they must be appropriated, in order to be entitled to the exemption."

In Red v. Morris, 10 S. W. 681, the following language is used:

"We think, that pursuant to the same policy, the Legislature, meant, by the employment of the terms of the Constitution, to prevent the owners of property from taking advantage of the exemption, when they leased the property to others for profit, to be used by the latter for the maintenance of schools."

In nearly all cases construing tax exemption of property we find the following language:

"Exemptions from taxation are never favored, and in the construction or interpretation of the law extending exemptions from taxation to any citizen or class of property all doubts are resolved against the exemption. Morris v. Mason, 5 S. W. 519; City of Houston v. Scottish Rite Benevolent Association, 230 S. W. 978; City of Abilene v. State, 113 S. W. (2d) 631, 635."

In all the above cases the courts in construing the right of property to tax exemption look primarily to the basic purpose for which such property is acquired and the use to which it is devoted. The cases referring to schools and charitable institutions deny or grant tax exemption on the theory of whether or not the property is "exclusively used" for such purposes, while those referring to the properties of cities do not limit tax exemption to such strict terms but to such as are "owned and held for public purposes." All authorities indicate that the properties must be acquired and held for only those purposes expressly declared exempt by the Constitution. Thus property owned by cities must be devoted to present public purposes, as in the Galveston Wharf Co. case, above, or acquired in furtherance of a present intention to devote it to a definite public purpose, such as in City of Abilene case, supra. Our present situation is based on the tax exemption of property which cannot be directly used for public purposes at this time, or in the future, and may, at the most, be only indirectly beneficial to the public by furnishing funds for construction or maintenance of parks. We cannot believe that the property not used as parks are exempt from taxation, for to hold otherwise would permit a city to acquire and hold vast tracts of land, free from all taxes, at the expense of the other local property owners.

We therefore believe that the properties involved in our second answer, that is, those described in section VII, clause (b) and (d) of the court's judgment construing the will of Dr. Samuell, are subject to taxation.

Your question also relates to the necessity of an order of the Commissioners' Court purporting to direct the Tax Assessor to place the property on his exempt rolls.

In 40 Tex. Jur., Section 996, page 133, it is said:

"The board of equalization is concerned with the valuation of the property on the rolls, not with the listing of them. . . More particularly, the board may not add to the roll property not entered, nor eliminate an entry appearing on the tax roll. County of Galveston v. Galveston Gas Co., 10 S. W. 583; Sullivan v. Bitter, 113 S.W. 193."

In 40 Tex. Jur., Section 98, page 137, it is said:

"The authority to assess property, save in exceptional cases, is vested in the assessor of taxes of the several counties of the state and the method of making such assessment is plainly pointed out by statute, Sullivan v. Bitter, supra."

We therefore believe that there is no necessity for any such order as the above authorities plainly indicate that it would not have any legal effect.

We trust that the foregoing answers your inquiries.

Yours very truly

APPROVED MAY 12, 1942
Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By /s/ Alfred F. Herbelin
     Alfred F. Herbelin
          Assistant

AFH:IM:mjs

APPROVED OPINION COMMITTEE
BY /s/ RWF CHAIRMAN