

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 10, 1952

Hon. W. A. Hadden
County Attorney
Pecos County
Fort Stockton, Texas

Dear Mr. Hadden:

Opinion No. V-1550

Re: Applicability of ad valorem taxes
to oil royalties owned by Pecos
County Water Improvement Dis-
trict No. 2.

     You request the opinion of this office on whether the royalty of 1/8th of the oil and gas produced under a lease on land owned by the Pecos County Water Improvement District No. 2 of Pecos County, Texas, is subject to ad valorem taxation against the District. Your request is based upon the following information which you have furnished us.

     The Pecos County Water Improvement District No. 2 of Pecos County, Texas, is the owner of several tracts of land which the District has leased for oil and gas, and oil is now being produced and royalty paid from some of said tracts of land. The tracts of land in question were purchased by the District from prior owners and is property essential to the operation of the dis-trict, such as canals, reservoirs, etc. The money derived from this royalty is used in operating costs and maintenance of the sys-tem. The District was formerly a water district but changed to a conservation and reclamation district under Section 59 of Article XVI of the Constitution.

     Our State Constitution provides in part as follows:

     " . . . the legislature may, by general laws, exempt from taxation public property used for public purposes . . ." (Tex. Const. Art. VIII, Sec. 2.)

     Article 7150, Vernon's Civil Statutes, was enacted pur-suant to the authority granted to the Legislature by this constitu-tional provision. This article provides in part:

     "The following property shall be exempt from taxation, to-wit:

     " . . .

"4. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof . . ."[1]

In 1917, Section 59 of Article XVI was adopted as part of the Constitution of this State. It authorized the Legislature by appropriate legislation to conserve and develop water resources of the State. This section declares that the districts to be formed thereunder shall be regarded as

" . . . governmental agencies, and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges, and functions concerning the subject matter of this amendment as may be conferred by law."

That a water improvement district such as the one under consideration here is a political subdivision of the State and its property when used for a public purpose is exempt from taxation is confirmed in the case of Bexar-Medina-Atascosa Counties Water Improvement District No. 1 v. State, 21 S.W.2d 747 (Tex. Civ.App. 1929, error ref.), which states the law in this language:

"The only issue in this cause is: Has Medina County the power and authority to assess and collect taxes, state and county, on the dams, reservoirs, canals, ditches, and other property necessary for the conservation and distribution of waters in the district?

"It is provided by article 8, § 2, of the Constitution of Texas, that the Legislature may by general laws exempt from taxation public property used for

---

1/ Although the attempted exemption in Article 7150 is broader than authorized, the provision is operative, to the extent of the Legislature's power, that is, to exempt such property when used for public purposes. City of Abilene v. State, 113 S.W.2d 631 (Tex. Civ.App. 1937, error dism.).

Subsection 4a of Article 7150, which attempted to exact "payments in lieu of taxes" against districts organized pursuant to Section 59, Article XVI of the Constitution, was held unconstitutional in Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48 (1945).

public purposes, and in pursuance of that authority
enacted Rev. St. 1925, art. 7150, in section 4, of
which it is provided: 'All property, whether real
or personal, belonging exclusively to this State, or
any political division thereof,' shall be exempt from
taxation. The very statutory requirements for the
creation and formation of water improvement dis-
tricts would seem to stamp them as political divisions
of the state, the county judge, the commissioners'
court, the election of directors, all these are govern-
mental powers provided for in detail by law. The dis-
trict is not an ordinary corporation organized for pur-
poses of gain to its members, but is a public agency,
using the money raised by taxation to advance the in-
terests of the landowners within its jurisdiction. It is
a political corporation or division of the state which
has principally for its object the administration of the
government, or to which the powers of government, or
a part of such powers, have been delegated. . . ."

Under the holding in the above case, the use of the land
in question as a site for reservoirs, canals, etc., is a use for a
public purpose, and if the property were being used exclusively
for that purpose it would undoubtedly be exempt from taxation. The
fact that the use, if a public one, results in the production of reve-
nue does not deprive the property of its exempt status. Galveston
Wharf Co. v. City of Galveston, 63 Tex. 14 (1884); A. & M. Consol-
idated Independent School Dist. v. City of Bryan, 143 Tex. 348, 184
S.W.2d 914 (1945); Lower Colorado River Authority v. Chemical
Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48 (1945).

On the other hand, property owned by a governmental
agency which is being used exclusively for a nonpublic purpose is
not exempt from taxation, even though income derived from the
property is devoted to the financing of the public functions of the
agency. Att'y Gen. Ops. O-2506 (1940), V-1399 (1952).

The extraction of oil and gas is not a public purpose
within the contemplation of the powers conferred on water dis-
tricts; and if the property in question was being held and used
solely for the purpose of leasing it for oil and gas development,
it would not be exempt from taxation. However, under the facts
you have stated, it appears that the property is being used pri-
marily for carrying on the public functions of the district and
that the leasing for oil and gas production is only a secondary use.

The question for decision is whether the secondary use
of the property for a nonpublic purpose, which produces income to

the district, will prevent it from coming within the exemption pro-
visions of Article 7150.

In City of Abilene v. State, 113 S.W.2d 631 (Tex. Civ.
App. 1937, error dism.), after comparing the exemption provisions
in Article XI, Section 9 of the Constitution (which exempts public
property used exclusively for a public purpose) and in Article VIII,
Section 2, the court said:

> ". . . These considerations lead us to the con-
> clusion that as to the power of the Legislature, to
> exempt public property from taxation, all such pro-
> perty should be regarded as 'used for public pur-
> poses' when it is owned and held for public purposes,
> but not owned or held exclusively for such purposes;
> and there has been no abandonment of such purposes.

> "No valid argument can be made, we think, that
> public property owned and held only for public pur-
> poses is not beyond the power of the Legislature to
> tax. . . .

> "But what about public property owned and held
> for public purposes but partly used for other pur-
> poses? Can there be any doubt that such property is
> subject to taxation, unless its exemption is, in the first
> place, authorized by Constitution, art. 8, § 2, and, in
> the next place, is provided for by a general law enacted
> by the Legislature? There can be no doubt of it, if it
> can be said that such property is used for public pur-
> poses. . . ."

In view of this language, we are of the opinion that a
secondary use of a portion of the property for a nonpublic purpose
would not subject the entire property to taxation. In Att'y Gen. Op.
O-6486 (1945), it was held that a city hall did not become subject
to taxation because a portion of the building was rented to private
persons. So far as we can find, there has been no case decided in
Texas in which the taxing authorities, while recognizing the exempt
status of that portion of the property which is actually devoted to a
public use, have attempted to tax the portion which is used for a
nonpublic purpose. However, we are of the opinion that the exemp-
tion extends to the property as a whole and no part of it is taxable
where the portion which is used for a nonpublic purpose is not
distinct from the remainder of the property.

In the present case, the exempt status of the surface es-
tate is not questioned, your inquiry relating solely to the fractional

part of the mineral estate which is owned by the district. The doctrine of severance of the estate created by the usual oil and gas lease in this State from the surface of real estate is too well established to require discussion. However, we can find no clear indication from the decisions that by the conveyance of 7/8ths of the minerals to the lessee the 1/8th ownership which is retained by the lessor becomes severed from his ownership of the surface. To the contrary, a subsequent conveyance of the land by the lessor would transfer his ownership in the mineral estate as well as the surface estate, in the absence of an express reservation or exception of the mineral estate. Japhet v. McRae, 276 S.W. 669 (Tex. Comm.App. 1925); Bibb v. Nolan, 6 S.W.2d 156 (Tex.Civ.App. 1928, error ref.). Under the facts in Victory v. Hinson, 129 Tex. 30, 102 S.W.2d 194 (1937), it was held that the tax assessor could assess the lessor's royalty interest separately from the surface estate, but the court declined to hold that there had been a severance of the lessor's mineral and surface ownership.

Under these holdings, the net result of the District's leases was to retain 1/8th of the minerals combined with the surface in one ownership. Although the question is not free from doubt, we are of the opinion that the District's ownership in the mineral estate is not held separately from the surface estate and, since the District is using the property primarily for a public purpose, it may not be taxed for any portion of its ownership. Consequently, the royalty owned by the District under the oil and gas leases is not subject to taxation. This exemption, of course, does not extend to the 7/8ths mineral interest which the lessees acquired under the leases.

## SUMMARY

The 1/8 royalty interest owned by a water improvement district under an oil and gas lease executed by the district is exempt from taxation where the district owns and uses the land for the primary purpose of maintaining reservoirs, canals, etc., in connection with the performance of its governmental functions. It is property owned and used by the district for a public purpose within the meaning of Art. 7150, subd. 4, V.C.S.

APPROVED:                                    Yours very truly,

W. V. Geppert                                 PRICE DANIEL
Taxation Division                             Attorney General

Mary K. Wall
Reviewing Assistant

Charles D. Mathews                      By
First Assistant                                   L. P. Lollar
                                                             Assistant
LPL:mw