

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
~~WILLIWILSON~~
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-4891
Re: Whether or not ad valorem
taxes must be collected on ex-
cess land owned by the State
prior to the date of a deed
of acquittance under Article
5421c-1, V.A.C.S.

This is in reply to your inquiry of whether or not,
prior to the giving of a deed of acquittance by the Land Com-
missioner, State and County taxes must be collected on ex-
cess acreage in surveys patented by the State.

The facts given by you are as follows: Survey 65,
Certificate 1225, Abstract 52, original grantee A.B. & M.,
La Salle County, was patented as containing 640 acres, and
taxes have been paid on 640 acres. A recent survey indicates
that said tract contains excess acreage in the amount of 116
acres; and a deed of acquittance under date of September 2,
1942, was obtained from Hon. Bascom Giles, Commissioner of
the General Land Office, covering Survey 65 as containing 756
acres. Such deed of acquittance was obtained under Article
5421c-1, V.A.C.S., being Section 4, House Bill No. 9, 46th
Legislature, approved June 16, 1939; and the land owners paid
the State of Texas the appraised value of such excess acreage.

The question has now arisen as to whether or not there
are State and County ad valorem taxes due for the period prior
to September 2, 1942, on the 116 acre excess in said survey,
State and County taxes having been paid on only 640 acres by
the owners of said 640 acres, who were the good faith claim-
ants of all of said survey.

The statute under which this purchase was made and the
deed of acquittance given was Article 5421c-1, V.A.C.S., which
reads as follows:

"In all cases where the area of a tract of
land titled or patented exceeds the quantity
called for in the title or patent, and where

under the existing law the title to all or any part thereof shall or may be affected by the existence of such excess, then any person owning such survey or having an interest therein may pay for such excess acreage at such price as the empowered authority may fix.  Any person owning any interest in a titled or patented survey in which excess acreage exists who desires to pay for such excess acreage, shall file with the Land Commissioner a request for an appraisement of the land with corrected field notes in the form now provided by law, together with a statement of the facts pertaining to his right to purchase, which statement shall be sworn to, and such other evidence of his right to purchase as the Commissioner may require.  Should it appear that such excess actually exists and that the applicant is entitled to the benefits of the law, then the Commissioner  shall execute a deed of acquittance covering such land in the name of the original patentee or his assignees with such reservation of minerals or with no mineral reservation, accordingly as may have been the case when the survey was titled or patented.  Such transfer shall inure distributively to the benefit of the true and lawful owners of the survey in proportion to their holdings."

For the purposes of this opinion we will assume in this case that the original grantee only obtained title to 640 acres or a 640/756th interest in the 756 acre survey, and that the State continued to have title to the excess above 640 acres in the survey until the deed of acquittance was given. The above quoted Article 5421a-1, we believe, presupposes that the excess mentioned is State owned land, the title to which can be acquired by purchase from the State in compliance with the act.  By invoking the terms of said article and making the purchase thereunder the applicant cannot deny that the State owned the excess acreage which he seeks to buy and that title thereto is and always has been in the State.  In 34 Tex. Jur. 93 a statement is made as follows:

".  .  .  . The State is entitled to recover an excess of land which has been included in a survey by mistake; and statutes have from time to time made provision for the ascertainment and disposition of excesses .  .  . .."

On the assumption that the State had title to the 116 acre excess in this case, we will proceed to discuss whether

or not that interest was taxable.  The State had just as good a title to a 116/756th interest in said survey (a 116 acre interest in 756 acres) as if it had owned outright and alone a 116 acre block of land.  In the case of Thomas v. Cline, 135 S. W. 2nd 1018, in which the court found that the State had title to a 6.7 acre excess in a section originally conveyed as having only 640 acres, but actually containing 646.7 acres, the court said:

> "The acreage in excess of 640 acres in said section 46, until purchased from the State, was never owned by plaintiff Thomas, nor defendant Cline, nor their predecessors in title, but it was owned by the State and held for the benefit of the public free schools of Texas.  Until the disputed strip became the property of Cline, by purchase from the State, plaintiff Thomas could not acquire title thereto by limitation, and limitation did not begin to run until the conveyance by the State to Hatch for the benefit of Cline.

> " . . . . .

> "Title to said land belonging to the State was not acquired by plaintiff Thomas by adverse possession, even if Cline recognized the old fence line as the boundary between the tracts.  Weatherly v. Jackson, 123 Tex. 213, 71 S. W. 2d 259."

It is a well known rule of law that property belonging to the State is not subject to taxation because it would result in the State taxing itself.  Corporation of San Felipe de Austin v. State, 111 Tex. 108, 229 S.W. 845; State v. Locke, 29 N. Mex. 148, 219 Pac. 790, 30 A.L.R. 407.  In 2 Cooley on Taxation, 4th Ed., 1317, it says:

> " . . . . the general rule, independent of constitution or statute, is that property belonging to the state or a political division thereof is not taxable, on the theory that such taxation would merely be taking money out of one pocket and putting it in another, unless the constitution or states (statutes) clearly show an intention to tax such property; . . . ."  (Parenthesis ours)

Our answer to your question is that State and County taxes are not due on the 116 acre excess of the property in question for the period prior to the date of the deed of acquittance for said excess, to wit, for the period prior to September 2, 1942.

In view of the fact that this excess land became taxable between January 1 and December 31, to wit, on September 2, the following language of Article 7151, V.A.C.S., is applicable, to wit:

" . . . .If any property has, by reason of any special law, contract or fact, been exempt or has been claimed to be exempted from taxation for any period or limit of time, and such period of exemption shall expire between January 1, and December 31 of any year, said property shall be assessed and listed for taxes as other property; but the taxes assessed against said property shall be for only the pro rata of taxes for the portion of such year remaining."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Cecil C. Rotsch
Cecil C. Rotsch
Assistant

CCR:ff:wc

APPROVED NOV 13, 1942
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman