### CORPORATION OF SAN FELIPE DE AUSTIN V. STATE OF TEXAS.

#### No. 3320.  Decided April 6, 1921.

#### (229 S. W., 845.)

**1.—Municipal Lands—Taxation.**

Land belonging to the municipality of San Felipe de Austin, a remnant of five leagues granted that town by the Mexican Government, in 1824 for the use of its inhabitants as timber and grazing land, confirmed to. such corporation by legislation of the Republic of Texas, and still used for the same purposes by the inhabitants, now about 100 in number, is not subject to taxation. (Pp. 109-111).

**2.—Same—Public Use.**

Grants of land by Spain or Mexico, to municipalities, for the common use of their inhabitants for timber or grazing land, were for a public use then recognized by law and the habits of the people, and the use, while continued for such purposes, remains an exclusively public one, within the meaning of the constitutional exemption from taxation. It is not necessary that .the property be used for govermental purposes. (Pp. 110, 111).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Austin County.

*Johnson, Matthaei & Thompson,* for appellant.—Under the Constitution and laws of this State all property owned by a municipal corporation, is exempt from taxation. Texas Constitution, Art. 8, Sec. 1; Texas Constitution, Art. 11, Sec. 9; Vernon's Sayles' Statutes, Art. 7507, Secs. 3 and 8; Galveston Wharf Co. v. City of Galveston, 63 Texas, 14; Daugherty, Tax Col., v. Thompson, 71 Texas, 192; Davis, Tax Collector v. Burnett, 77 Texas, 3.

*J. E. Edmondson,* County Attorney, for appellee.—The court did not err in rendering judgment against a municipal corporation existing under the constitution and laws of this State for delinquent taxes due by it upon land owned by it and foreclosing the tax lien upon such land. St. Edwards College v. Morris, Tax Collector, 82 Texas, 1; Negley v. City of Henderson, 55 S. W., 554; Board of Councilmen of City of Frankfort v. Commonwealth, 82 S. W., 1008; City of Covington v. Commonwealth, 107 Ky. Law, 105, 39 S. W., 836.

We most respectfully submit that the land belonging to appellant is not exempt from taxation under either Art. 2 Sec. 1 & 2, nor under Art. 11 Sec. 9 of the Constitution. Our Constitution exempts such property only as is used for public purposes. By the word "For public purposes" is meant governmental purposes. The land upon which the tax lien is sought to be foreclosed is not used by appellant for governmental purposes. It is the remnant of five leagues of land originally granted to the town of San Felipe, all the other land having been sold by appellant except the land described in appellee's petition. The last case above cited was finally affirmed by the Supreme Court of the U. S. (173 U. S., 231. The proof shows that this land was not used by the corporation but by the citizens or individuals residing within the corporate limits of the town of San Felipe. Some of the citizens used it for grazing their cows thereon and others used timber from said land for fire wood and posts, not for the city, but for private use.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The question presented by the case is whether the unsold portion of the five leagues of public land originally granted by the Mexican Government to the town of San Felipe de Austin in 1824,—now 1813-½ acres, and being of the lands originally granted the municipality for use by its inhabitants as timber and grazing lands, is subject to State and County taxation.

Following the independence of Texas, the town of San Felipe de Austin was incorporated by a special act of the Congress of the Republic, in 1837. This act confirmed to the municipality title to all the public property in it. This act was amended by one approved January 20, 1841, which also confirmed to the citizens of the municipality all the powers and property originally granted by the Mexican Government, and providing that the powers and jurisdiction of the town should extend over the whole territory belonging to it.

These acts of the Republic are still in force.

In the original Mexican grant, giving the inhabitants of the municipality the right to cut timber for building and firewood from the "Woods" belonging to the municipality, it was declared that the timber land should not be sold or rented until in the judgment of the municipal authorities all the useful timber had been cut from it. None of the timber land comprised in the original grant has ever been sold.

The municipality of San Felipe de Austin now has only about 100 inhabitants. No taxes are levied for municipal purposes. All costs of the municipal government and for repairs of public buildings and streets, and maintenance of its school, are paid out of the proceeds of the sale of lots and interest on money loaned, originally obtained from the sale of lands of the municipality.

Ever since its creation the municipality has exercised the powers and enjoyed the privileges conferred by its charter.

The land upon which the taxes are sought to be imposed is now publicly used by the inhabitants of the municipality for grazing purposes and the furnishing of firewood in accordance with the terms of the Mexican grant, and—as we gain from the certificate of the Court of Civil Appeals—just as the original inhabitants used it under the grant. It has never been rendered for taxation. No attempt had ever been made to subject it to taxation until 1915, when it was assessed upon the delinquent rolls of Austin County for taxes for the years 1885 to 1915, inclusive. These are the taxes here sought to be recovered.

The case has a special interest because of the historic memories which cluster about the ancient town of San Felipe de Austin on the Brazos. It was the seat of Austin's colony, the place of Austin's residence during the time he was local governor of the colony; and there were held the sessions of the ayuntamiento which provided the local civil government for the region. It was given its name by Garcia, the Mexican governor, San Felipe being his patron saint, and the name of Austin being added as a compliment to the impresario. Texas liberty and independence were cradled there. The first conventions of the Texas people, in 1832 and 1833, were held amid its primitive surroundings, followed by the general consultation of 1835. It remained the center of patriot interests in Texas until the formation of the Republic. It is now but a village of a few inhabitants, an impressive monument of the mutations of time, the lingering relic of a mighty period, yet in its isolation rich with the historic traditions of nearly a hundred years, and to be venerated as a shrine of Texas freedom. It is more than an ordinary cause that now calls it into the forums of the State to defend its ancient rights.

There can be no warrant for denying those rights in this land. They are entitled to be preserved in their full integrity as given by the original grant of the Mexican government and as confirmed by successive acts of the Congress of the Republic. Under the rights of that grant as so confirmed the land was exempt from taxation as public land of the municipality devoted to a public use. The character of the land has undergone no change, and it is therefore still exempt.

The appropriation of large areas for grazing and timber purposes is of course unknown in the establishment of municipalities in this day, but it was common in the creation of the early Texas towns chartered by the Spanish and Mexican governments. Those lands were as fully impressed with a public use and devoted to a public purpose as are the parks and public grounds of the cities of this

time. It was merely a different habit in the people, a different environment which surrounded them, and a different necessity growing out of that environment, which led to their dedication to the particular use. It was none the less a public use, and as valuable to the people of those towns as are the public grounds of present-day municipalities to their inhabitants.

There can be no doubt that the purpose of the acts of the Congress was to confirm to the municipality the full right to this land as public land, to be so held by it so long as it might see fit to devote the land to public uses for the benefit of its inhabitants. The land had that character under the Mexican grant; and the character it then possessed entered into the title confirmed by the acts of the Congress. Those acts still remain in full force. The original public use of the land has continued to this day, and with it has continued the land's original public character.

The use of the land at the time of the passage of the acts of the Congress was clearly a public use. It was a use necessarily recognized by the Congress as public in its confirmation of the municipality's rights. What the Congress confirmed as a public use is not now to be held a private use. Being a public use under those acts and the acts being still in force, it remains a public use. To hold otherwise is simply to change and in part destroy the rights confirmed to the municipality by the Congress of the Republic.

The Constitution exempts from taxation the property of municipalities devoted exclusively to the use of the public. The municipalities of the State are political subdivisions of the State. To tax their property devoted to public uses but amounts to the State's taxing itself. It is therefore not taxable.

The test is not whether the property is used for governmental purposes. That is not the language of the Constitution. This Court has never adopted that narrow limitation and the weight of authority is opposed to it. Much public property of municipalities exempt from taxation has, and can have, no governmental use. The test is whether it is devoted exclusively to a public use. In Galveston Wharf Company v. Galveston, 63 Texas, 14, the interest of a city in a public wharf, represented by stock in a wharf corporation, was held not taxable under the Constitution. It would be difficult to find anything "governmental" in the public use of a wharf.

We answer the first question certified, that this land of San Felipe de Austin is not subject to taxation. This makes unnecessary answer to the other questions.