# IN THE SUPREME COURT OF TEXAS

════════════

No. 19-0962

════════════

ODYSSEY 2020 ACADEMY, INC., PETITIONER,

v.

GALVESTON CENTRAL APPRAISAL DISTRICT, RESPONDENT

════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════

JUSTICE GUZMAN, joined by CHIEF JUSTICE HECHT and JUSTICE HUDDLE, dissenting.

The Texas Constitution mandates that "[t]axation shall be equal and uniform"[1] but expressly provides that property "shall be exempt . . . from taxation" when "devoted exclusively to the use and benefit of the public".[2] At issue here is the availability of an ad valorem tax exemption for real property leased and used by a charter school as a public-school campus. Like traditional public schools, government-funded charter schools are public entities that provide a cost-free public education. And, as all agree, the charter school's campus is used exclusively for

---

[1] TEX. CONST. art. VIII, § 1(a).

[2] *See id.* art. XI, § 9.

public purposes.[3]  The Court nonetheless holds that no tax exemption is available to Odyssey 2020 Academy, Inc. because the charter school pays ad valorem property taxes under the terms of a lease rather than as the property's owner.[4]  Public ownership, the Court holds, is a necessary predicate to tax exemption under Article XI, section 9 of the Texas Constitution (Article 11).[5]  I respectfully dissent because Article 11's text does not support the Court's conclusion.

Article 11 does indeed provide a tax exemption for publicly owned property, but it also exempts property that a governmental entity does not own but nevertheless "devote[s] exclusively to the use and benefit of the public".[6]  Such is the case here.  Article 11 thus exempts the charter-school campus from ad valorem taxation.

## I. Constitutional Tax Exemption

Article 11 is a "self-operative" tax exemption that applies to municipalities and arms of state government "serv[ing] a public purpose" and "absolutely exempts from taxation" covered property.[7]  The Court has previously explained that the "automatic" exemption in Article 11 prevents "an idle expenditure of public funds" that would result if government were made to

---

[3] *See id.*

[4] In many leases, property-tax liability is passed through to the lessee indirectly, but Odyssey's lease makes the charter school directly responsible for paying the tax bill.

[5] *Ante* at 14.

[6] TEX. CONST. art. XI, § 9.  Throughout this opinion, punctuation not found in Article 11 is placed outside the quote marks for clarity.

[7] *Lower Colo. River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 48, 50 (Tex. 1945); *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945).

"engage in the senseless process of taxing itself, the net result of which would be [only] to take its own money out of one pocket for the purpose of putting it into another."[8]

The constitutional exemption in Article 11 encompasses charter schools like Odyssey because "open-enrollment charter schools act as an arm of the State Government."[9] The Court does not contend otherwise.[10] Where we part company is with respect to the nature of the property the Constitution exempts from taxation. Our disagreement centers on the proper grammatical construction of Article 11.

In relevant part, Article 11 provides:

> The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt . . . from taxation . . . .[11]

The Court construes Article 11 as exempting only the property of public entities "owned and held only for public purposes".[12] In the Court's view, the provision's remaining text, introduced by the phrase "such as", merely supplies a non-exclusive list of property that may be "owned" by public entities "and held only for public purposes".[13] While facially reasonable, the Court's construction is inconsistent with the provision's grammatical structure, renders constitutional language superfluous, and fails to give effect to the precise language the people adopted.

---

[8] *Chem. Bank*, 190 S.W.2d at 51.

[9] *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 529 (Tex. 2020).

[10] The parties also do not dispute that Odyssey is a public entity.

[11] TEX. CONST. art. XI, § 9.

[12] *Ante* at 17.

[13] *Id.*; TEX. CONST. art. XI, § 9.

3

When applying the Texas Constitution, "we construe its words as generally understood" and "rely heavily on the plain language of [its] literal text."[14] If possible, we do not treat any of the Constitution's language as surplusage, and we "avoid constructions that would render any constitutional provision meaningless or nugatory."[15] Applying these standards, Article 11 is more aptly construed as exempting from taxation three separate categories of property. That is,

> 1. "The property of counties, cities and towns, owned and held only for public purposes, such as
> [i] public buildings and the sites therefor,
> [ii] fire engines and the furniture thereof, *and*
> [iii] all property used, or intended for extinguishing fires,
> . . . shall be exempt . . . from taxation";
>
> 2. "[P]ublic grounds . . . shall be exempt . . . from taxation";
>
> 3. "[A]nd all *other* property devoted exclusively to the use and benefit of the public shall be exempt . . . from taxation".[16]

Giving full effect to its syntactic structure, Article 11 exempts property that is either **owned** by public entities exclusively for public purposes *or* **used** by public entities exclusively for public purposes.

The Court is correct that Article 11 provides an exemption for publicly owned property used only for public purposes. The Court is also correct that Article 11 supplies a non-exclusive list of property that would qualify for that public-ownership exemption.[17] But the Court is wrong

---

[14] *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000).

[15] *Id.*

[16] TEX. CONST. art. XI, § 9 (emphases added).

[17] The Court has previously rejected the argument that Article 11's "all other property" language invokes the doctrine of *ejusdem generis* to limit the exemption to the kind of property listed. *Lower Colo. River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 48, 51 (Tex. 1945). Rather, we held this language enlarged the exemption and was consistent with the economic reality that a narrowed construction under the *ejusdem generis* doctrine would, "in its

4

about where the exemplar list ends. Rather than concluding with "all other property devoted exclusively to the [public's] use and benefit", as the Court holds, the list of examples initiated by the "such as" phrase grammatically ends with "and all property used, or intended for extinguishing fires". Syntactically, that phrase closes the "such as" list both by virtue of the "and" that precedes it and by the parenthetical comma that follows it.[18] The list's terminal point is further confirmed by the absence of a parenthetical comma after "all other property devoted exclusively to the use and benefit of the public", which would be necessary if the "such as" clause were inclusive of that language, as the Court contends.[19] The first phrase, and first exemption, in Article 11 applies to publicly owned property, as the Court says, but it is not the only exemption the provision establishes.[20]

---

strict sense," "mean that government in Texas could engage in the senseless process of taxing itself" contrary to Article 11's purpose. *Id.* To the extent the Court suggests that our rejection of the *ejusdem generis* doctrine supports its narrow construction of Article 11 as being limited only to publicly owned property, *see ante* at 17-18, that argument goes beyond *Chemical Bank*'s analysis of the issue.

[18] *See* TEX. CONST. art. XI, § 9.

[19] *See id.*

[20] The Court mistakenly relies on the series-qualifier canon in asserting that "property . . . owned and held for public purposes" is an adjectival clause modifying all three categories of property exemptions. *Ante* at 17 n.12. The series-qualifier canon provides that "[w]hen there is a straight-forward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 147 (2012). First, as explained above and *infra*, Article 11 does not involve a "straight-forward parallel construction." Second, the central interpretive dispute is what text constitutes "the entire series." As I read Article 11, there are three categories of exemptions that are each the subject of the "shall be exempt" verb phrase and one of those subjects—the first exemption—includes a series that is introduced by the "such as" phrase and ends before "public grounds," which is the provision's second subject and second exemption. The Court contends that Article 11 contains only one subject that modifies the "shall be exempt" verb phrase with a series that includes two categories of examples (1) improved property and chattels and (2) "public grounds and all other property". The series-qualifier canon does not answer the interpretative question as to what text comprises the series. Rather, in relying on that canon, the Court merely assumes the validity of its argument that Article 11's "such as" clause includes all three categories of property that follow it. As demonstrated above, that is not a grammatically accurate reading of the text because the "such as" clause is closed by a parenthetical comma preceding the "public grounds" exemption.

The next phrase in Article 11 provides a separate exemption for "public grounds"[21]—that is, publicly owned real property as compared to publicly owned chattels and improved property exempted by the first phrase. The word "public" means "of or relating to a government"[22] and, like the first exemption, makes this exemption applicable only to grounds owned by public entities. In interpreting another constitutional provision, we said just that, observing that public ownership is required to make something "public property."[23] Article 11's context further constrains the "public grounds" exemption to those properties held only for a public purpose. The requirement that tax-exempt grounds be "public" immediately follows the first exemption's application to property "owned and held only for public purposes", which is then described as referring to "public buildings and the sites therefor".[24] In this manner, Article 11 defines what constitutes "public" property for purposes of the automatic exemption.[25]

In contrast, the last exemption applies to "all other property devoted exclusively to the use and benefit of the public".[26] Notably, this phrase is not textually limited to "public" property, nor does it refer to public ownership like the preceding two phrases. Rather, it applies to "other property" and focuses on the property's "exclusive[]" "use" by and for the "public".[27] In this way, the context makes clear that "other" means "different" and "not the same" as the preceding two

---

[21] *See* TEX. CONST. art. XI, § 9.

[22] *Public*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993).

[23] *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 912 (Tex. 1972) (interpreting "public property" in Article VIII, section 2 to require "public ownership").

[24] TEX. CONST. art. XI, § 9.

[25] *See id.*

[26] *Id.*

[27] *Id.*

exemption categories.[28]  The difference relates to the public-ownership requirement.  The third

category is a clear textual shift from public property to "other property" used for public purposes.[29]

We have recognized that, under the Constitution, "public use" and "public property" are

separate concepts.[30]  Ownership is required to make something "public property."[31]  "Public use"

is not equivalent phrasing and mere "use for public purposes" is not sufficient to make something

---

[28] *Other*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993).  The Court argues that "other" means "a further . . . thing of the type already mentioned" because it is preceded by "and" as opposed to "or."  *Ante* at 17.  But adopting such an interpretation would constitute an application of the *ejusdem generis* doctrine, which the Court has explicitly rejected as being inconsonant with Article 11.  *See Lower Colo. River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 48, 51 (Tex. 1945).  It is therefore immaterial what coordinating conjunction is used in this exemption.

[29] The Court argues that the absence of an Oxford comma separating "public grounds" and the third exemption for "all other property devoted exclusively to the use and benefit of the public" indicates that these property categories are merely components of a single exemption.  *Ante* at 21 & 21-22 n.19.  I disagree.  First, Article 11 does not consistently use Oxford commas, so the absence of such a comma after "public grounds" says little.  *See* TEX. CONST. art. XI, § 9 ("The property of counties, cities and towns . . . shall be exempt . . . .").  Second, Oxford commas, which are also known as "serial" or "series" commas, are a style preference that was not widely in use until decades after Article 11 was enacted and even today remains a topic of debate.  *See* PETER SUTCLIFFE, THE OXFORD UNIVERSITY PRESS: AN INFORMAL HISTORY 113-14 (1978) (crediting F. Howard Collins with "inventing" the Oxford comma in *Authors' & Printers' Dictionary*, which was published in 1912); NEW HART'S RULES: THE OXFORD STYLE GUIDE 77 (2nd ed., Oxford University Press 2014) ("The presence or lack of a comma before *and* or *or* in a list of three or more items is the subject of much debate.  Such a comma is known as a serial comma.  For a century it has been part of Oxford University Press style to retain or impose this last comma consistently . . . ."); *see also* BRYAN A. GARNER, A DICTIONARY OF MODERN AMERICAN USAGE 537 (1998) (noting that of the two styles of comma usage—open and close—the open style, which "results in fairly light uses of commas" was heavily favored in the 19th and 20th centuries and observing that "[w]hether to include the serial comma has sparked many arguments").  Finally, separation of ideas can be effectuated or communicated other than by using commas, and in Article 11, this separation is accomplished by the phrase "all other property".

What is more notable than the absence of a comma after "public grounds" is the absence of a *conjunction* before "public grounds", which would be necessary to tether that language to the "all other property" language, as the Court does.  Also notable is the absence of a parenthetical comma where it would *have* to be if the Court's construction were correct.  The Court's interpretation and schematic articulation of Article 11 as creating only a single exemption ignores these critical textual omissions.  *See ante* at 17 n.13 & 21-22 n.19.

[30] *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 912 (Tex. 1972) (interpreting the permissive tax exemption in Article VIII, section 2, applicable to "public property used for public purposes").

[31] *Id.* ("In this instance the Legislature is authorized to exempt 'public property used for public purposes.'  It is essential then that the property be used for public purposes but that in itself is not enough.  The property must, *wholly apart from its use*, be 'public property.'  In our opinion this means public ownership[.]" (emphasis added)).

7

"public property."  In this respect, Article 11's inclusion of a public ownership requirement for the first two exemptions as compared to the third exemption's omission of the word "public" as a *property* descriptor and simultaneous inclusion of "public" as a *use* descriptor precludes an interpretation that requires the property to be publicly owned.  In effect, Article 11 deems property *used* by a *public entity* exclusively for the public's benefit to be public property for purposes of taxation.

The Court contends that Article 11 cannot be construed as containing three exemptions without adding language limiting its application to governmental use, which it says would be necessary to avoid the exemption's application to private entities covered by certain permissive exemptions in Article VIII, section 2 of the Constitution (Article 8).[32]  But words do not have to be added to effectuate that limitation because Article 11's own text and placement within the Constitution clarifies that only governmental entities are eligible for Article 11's exemptions.  First, Article 11 is in a portion of the Constitution that pertains only to governmental entities.  By title, that portion of the Constitution is applicable to "Municipal Corporations" and every section that falls within that article is applicable only to counties, cities, towns, and other municipal corporations.[33]  The specific section at issue here—Article 11, section 9—likewise pertains only to counties, cities, and towns, which we have construed as applying to all governmental entities.[34]  The Court's fear that a three-exemption construction of Article 11 could be applied absent

---

[32] *Ante* at 20.

[33] TEX. CONST. art. XI, §§ 1-5, 7-9, 11-13.

[34] *Lower Colo. River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 50, 52 (Tex. 1945).

8

governmental use is unfounded, and the Court's contention that words would have to be added to Article 11 to effectuate that limitation is incorrect.

Moreover, the Court's alternative construction of Article 11 as containing only a single exemption fails because it reads out the exclusive-use phrase and creates surplusage. Under the Court's reading, the phrase "property . . . owned and held only for public purposes" has an identical meaning to the subsequent phrase "property devoted exclusively to the use and benefit of the public".[35] "Exclusively" in the exclusive-use provision and "only" in the public-ownership provision both mean "sole".[36] To hold property solely for public purposes means that it can only be used for public purposes. Under the Court's interpretation, the exclusive-use phrase is therefore redundant of the public-ownership phrase because "only for public purposes" already encompasses "exclusive[] to the use and benefit of the public".[37] The only way to give effect to all of Article 11's language is to recognize that property exclusively "use[d]" by the public for the "benefit of the public" is exempt from taxation even if not "owned" by the public.[38] Odyssey's leased property is used exclusively for public-education purposes and is therefore exempt under Article 11's plain language.

In arguing that Article 11 requires public ownership, the Court points to our opinion in *Lower Colorado River Authority v. Chemical Bank & Trust Co.*, in which we stated "the legislature

---

[35] *See* TEX. CONST. art. XI, § 9.

[36] *Exclusive* and *Only*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993). "[O]nly" also means "exclusively." *Id.*

[37] *See* TEX. CONST. art. XI, § 9.

[38] *Id.*; *see Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (noting that we construe the constitution so as to give effect to all of its words and "avoid constructions that would render any constitutional provision meaningless").

9

is without power to tax any property publicly owned *and* held only for public purposes *and* devoted exclusively to the use and benefit of the public."[39] Focusing on the opinion's single-sentence formulation and multiple uses of the conjunction "and," the Court argues that *Chemical Bank* effectively declared Article 11 as being composed of a single tax exemption that, in all circumstances, requires the government's legal or equitable ownership of property that would otherwise be subject to taxation.

However, nothing about this formulation—read either in isolation or in the opinion's broader context—indicates that *Chemical Bank* was articulating Article 11 as a single exemption. More plausibly, the Court was acknowledging that Article 11 provides multiple grounds for exemption. The first "and" links the two requirements establishing exemption based on public ownership while the second "and" introduces the exclusive-use exemption. If the Court were setting out a single exemption, the proper grammatical choice would be to use a comma instead of the first "and." Replacing the first "and" with a comma would have clarified that it was listing three requirements for a single exemption. As it did not, a more reasonable interpretation of *Chemical Bank* is recognition that Article 11 is *not* composed of only a single exemption.

*Chemical Bank* also cannot be construed as supporting the Court's holding today because none of the parties in that case raised exclusive use as an independent basis for exemption, and the Court did not address it. Indeed, the facts in *Chemical Bank* did not warrant such an analysis, as the governmental entity in that case owned and controlled the property at issue.[40] The case before

---

[39] 190 S.W.2d at 52 (emphases added); *see ante* at 18.

[40] *Chem. Bank*, 190 S.W.2d at 50.

us today provides a previously unaddressed factual scenario involving a public entity leasing private property and devoting it exclusively to public use. This set of facts triggers the exclusive-use exemption in a way that our past cases have not, and unlike the precedent the Court relies on, applicability of that exemption has been expressly raised in this case.

The other cases the Court points to in support of its single-exemption construction of Article 11 are not on point for similar reasons: the Court did not address the exclusive-use ground for exemption in any of those cases, and none of those cases involved a public entity using property it possessed, but did not own, only for public purposes.[41] Our precedent correctly states the standard for the public-ownership exemptions but is silent as to the exclusive-use exemption. The Court mistakes this silence as affirmation of its non-existence. But in reality, there is no conflict between my construction of Article 11 and the outcomes reflected in our precedent.

With respect to Article 11's text, the Court contends that reading exclusive use as being an independent ground for exemption would make the public-ownership exemptions surplusage.[42] Viewing exclusive-use as an independent exemption would, the Court says, reduce the controlling

---

[41] The *Leander* and *Texas Turnpike* cases involved property solely owned and possessed by private entities. *See Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 909-10, 912 (Tex. 1972) (concerning whether a private company using its property for public purposes makes the property eligible for exemption under Article VIII, section 2 of the Texas Constitution); *Tex. Tpk. Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954) (noting that private-entity petitioners had title to and "are, and will be, in possession and control of the property" in assessing whether a public entity owned the property at issue). The *City of San Antonio*, *A. & M.*, and *Galveston Wharf* cases involved property owned by the government. *See State v. City of San Antonio*, 209 S.W.2d 756, 757-58 (Tex. 1948) (addressing whether property owned by public entities was being used for public purposes and therefore exempt from forced sale); *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915-16 (Tex. 1945) (concerning whether property owned by a public entity was being used for public purposes and therefore tax exempt); *Galveston Wharf Co. v. City of Galveston*, 63 Tex. 14, 23 (1884) (holding that a wharf partially owned by the city was used only for public purposes because of the wharf's role in state commerce and the public's right to use the wharf). None of these cases address the circumstances present here, where the government possesses but does not own the property at issue.

[42] *Ante* at 20-21.

11

inquiry to whether the property is being exclusively used for public purposes, owned or not, because the public-ownership exemptions have their own exclusive-use component.[43] For that reason, the Court asserts that construing Article 11 as having an independent exclusive-use exemption would render the public-ownership exemptions meaningless.[44]

It is true that exclusive use is a component of both the public-ownership and exclusive-use exemptions, so in some cases the inquiries will overlap. But these exemptions address different situations and are not identical. That is, the public-ownership exemptions apply to scenarios where property is publicly owned but exclusively used by *private* persons for public purposes. This scenario is exemplified by *Galveston Wharf Co. v. City of Galveston*, where the Court held that a wharf partially owned by the City of Galveston, but not operated by the City, was nonetheless entitled to a partial tax exemption because it was used for public purposes.[45]

But because the public-ownership exemptions do not apply absent such ownership, they do not encompass the obverse scenario: property privately owned but used by public entities exclusively for public purposes. That is the situation presented in this case. Under my view of Article 11, the public-ownership exemptions are not surplusage because they apply to scenarios that are not covered by the exclusive-use exemption. Stated differently, Article 11 recognizes that property used exclusively for the public may be owned but not possessed by a public entity and, conversely, that such property may be possessed but not so owned.

---

[43] *Id.*

[44] *Id.*

[45] 63 Tex. at 23.

12

The public-ownership exemptions cover the most obvious circumstances in which property would be devoted "exclusively" to public purposes while the exclusive-use exemption functions as a "catch all" that encompasses less common circumstances in which privately owned property is nonetheless being used by the government exclusively for the public. Article 11's specification of exemptions for (1) property owned and held by the government only for public purposes, such as improved property and chattels, and for (2) public grounds highlights those circumstances in particular without negating an exemption for (3) "all other property" that is "devoted exclusively to the use and benefit of the public".[46] Rather, through this contrast, Article 11 emphasizes that the phrase "all *other* property" means exactly what it says.

Additionally, the public-ownership language is not meaningless because the word "only" further clarifies that, when public ownership is involved, the property must also be exclusively used for public purposes.[47] "Only" dispels the notion that a different standard applies when public ownership is involved than when it is not. Repetition of the exclusive-use requirement through "only" and "all other property devoted exclusively to the use and benefit of the public" in Article 11 clarifies that, regardless of ownership status, exclusive use by and for the public is necessary for an Article 11 exemption.[48] Under the Court's single-exemption construction, this repetition serves no purpose.

Ultimately, the three-exemption construction of Article 11 is more reasonable than the Court's single-exemption construction. Interpreting Article 11 as providing three separate

---

[46] *See* TEX. CONST. art. XI, § 9.

[47] "[O]nly" means "exclusively." *Only*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993).

[48] *See* TEX. CONST. art. XI, § 9.

13

exemptions not only comports with and gives effect to the Constitution's plain language and grammatical structure, but also avoids taxing governmental entities that are using property exclusively to benefit the public. Whether a lessee is charged directly with paying the tax bill, as in this case, or whether tax costs are passed on indirectly through the cost of leasing, the economic reality of the Court's construction would result in "an idle expenditure of public funds" with the government "engag[ing] in the senseless process of taxing itself."[49]

## II. Preservation

The Court and the parties dispute whether Odyssey properly preserved its claim to an automatic exemption under Article 11. The Court and the Galveston Central Appraisal District argue that Odyssey failed to preserve the constitutional claim by raising it for the first time in its briefing to this Court. Odyssey concedes Article 11 was first briefed here, but it contends the argument is properly before the Court because Odyssey's statutory- and constitutional-exemption arguments under section 11.11 of the Tax Code and Article 8 of the Constitution rest on the same premise: that the charter-school campus is tax exempt because it is used exclusively for public purposes. I agree with Odyssey.

To preserve a complaint for appellate review, "a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefor, and obtain a ruling."[50] The stated grounds for the ruling must be made "with sufficient specificity to make the trial court

---

[49] *See Lower Colo. River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 48, 51 (Tex. 1945).

[50] *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (citing TEX. R. APP. P. 33.1); *see* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written [summary-judgment] motion, answer or other response shall not be considered on appeal as grounds for reversal.").

14

aware of the complaint."[51] The rationale behind the preservation rules is that "[p]reservation of error reflects important prudential considerations recognizing that the judicial process benefits greatly when trial courts have the opportunity to first consider and rule on error."[52] In essence, "the trial court should have the chance to rule on issues that become the subject of the appeal."[53] Even so, rules of error preservation "should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case."[54] More to the point, a party is always "free to construct new *arguments* in support of issues properly before the Court."[55]

Section 11.11(a) of the Tax Code provides a tax exemption for property "owned by this state" and "used for public purposes."[56] Article 8 of the Constitution authorizes the Legislature to pass laws "exempt[ing] from taxation public property used for public purposes".[57] In the trial court, Odyssey raised claims under section 11.11 and Article 8 but not Article 11. Nevertheless, I conclude Odyssey's Article 11 argument is fairly subsumed in these preserved claims because all three have "public purpose" as an essential element. Because those issues were preserved in the courts below, Odyssey's argument under Article 11 is essentially a new argument in support of issues properly before the Court, not a new issue that was not preserved.[58]

---

[51] TEX. R. APP. P. 33.1(a)(1)(A).

[52] *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014).

[53] *ETC Mktg., Ltd. v. Harris Cnty. Appraisal Dist.*, 528 S.W.3d 70, 74 (Tex. 2017).

[54] *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018).

[55] *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014).

[56] TEX. TAX CODE § 11.11(a).

[57] TEX. CONST. art. VIII, § 2(a).

[58] *See Greene*, 446 S.W.3d at 764 n.4.

Accordingly, I would hold that Odyssey's Article 11 exemption claim was preserved. Addressing that claim, I cannot agree with the Court that Article 11 provides a tax exemption only for property owned by a public entity. As I read the Constitution, Odyssey qualifies for exemption under Article 11 because it exclusively uses its leased property to benefit the public. Because the Court holds otherwise, I respectfully dissent.

_____
Justice Eva M. Guzman

**OPINION DELIVERED**: June 11, 2021

16